IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CLIMMONS JONES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:18-cv-02526-JPM-cgc |
| v. ) | |
| ) | |
| FEDERAL EXPRESS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Federal Express Corporation's ("FedEx") Motion for Summary Judgment, filed on May 21, 2021. (ECF No. 58.) Defendant moves the Court pursuant to Fed. R. Civ. P. 56 for an order granting summary judgment in its favor on the issue of whether FedEx's termination of Plaintiff violated Title VII of the Civil Rights Act of 1964 and on the issue of whether punitive damages are available to Plaintiff. (See generally id.) Defendant argues that Plaintiff cannot establish a *prima facie* case of employment discrimination because the alleged comparators are not similarly situated to Plaintiff. (Id.) Defendant also argues that, even if Plaintiff can establish a *prima facie* case, Plaintiff cannot prove that FedEx's legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual. (Id. at PageID 218.) Finally, Defendant argues that Plaintiff is not entitled to punitive damages because (1) Plaintiff has no evidence that FedEx acted maliciously or with reckless indifference in terminating his employment and (2) FedEx's anti-discrimination

policies and Plaintiff's access to and use of internal appeals processes demonstrates FedEx's good-faith efforts to comply with anti-discrimination laws. (ECF No. 58-2 at PageID 241.)

Plaintiff Climmons Jones, Jr. filed a Response on June 17, 2021. (ECF No. 63.) Jones argues that "FedEx terminated Mr. Jones's employment when he allowed a weapon to pass through security while permitting similarly situated white security officers to commit the same or worse infractions with little discipline, if any." (Id. at PageID 515.) FedEx filed its Reply on July 1, 2021, arguing that the alleged comparators are not similarly situated to Jones because, although each employee permitted a weapon into the FedEx hub, only Jones was not watching the security monitor at the time. (ECF No. 72 at PageID 808.)

For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

Jones is a 58-year-old African American male who worked as a Security Officer for FedEx from February 2, 1998 through August 16, 2017. (Plaintiff's Statement of Additional Facts ("Plaintiff SOF"), ECF No. 63-1 ¶¶ 1–2.)[1] On August 4, 2017, "Jones let a 40-caliber semiautomatic Smith and Wesson handgun, with 12 bullets in the magazine and one bullet in the chamber, through in-bound screening[.]" (Defendant's Statement of Undisputed Material Facts ("Def. SOF"), ECF No. 58-1 ¶ 8.) After the FedEx employee realized he had inadvertently brought a weapon into the FedEx hub, he attempted to leave and the weapon was discovered as it went through the outbound x-ray scanner. (Plaintiff SOF ¶ 6.)

Jones was suspended on the same day, after being shown the video of the incident and completing a report. (Jones Deposition, ECF No. 70-9 at PageID 757–59.) Jones admits that

---

[1] All of the facts included in this background are undisputed according to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Defendant's Response to Plaintiff's Additional Statement of Undisputed Facts. (ECF Nos. 63-1 & 71; see also ECF No. 58-1.)

the video "shows him digging into his bag for a phone charger, plugging his phone charger into an outlet, manipulating the chair, going back into his bag for a banana, and eating the banana." (ECF No. 58-2 at PageID 228; see also Jones Deposition, ECF No. 60-10 at PageID 315–16.) Having reviewed the video of the incident, the Court finds that FedEx's description that "the video makes clear that had Jones been looking at the x-ray monitor or had even 'rewound' the x-ray images that day he would have observed the weapon" is accurate, although Jones "does not recall seeing an image of a weapon on the x-ray monitors when he watched the video[.]" (ECF No. 58-2 at PageID 228; see also Jones Deposition, ECF No. 60-10 at PageID 318.)

Jones's supervisor at the time of this incident and his termination was Ronald Russell, a white male. (Plaintiff SOF ¶ 4.) Russell reported to Avis Buford-Darling, a black female. (Id.) Buford-Darling reported to Managing Director Ken Adams, a white male. (Id.) And Adams reported to Vice President Mark Hogan, a white male. (Id.) Between August 9 and August 16, 2017, Russell met with Buford-Darling, Adams and Hogan to discuss the appropriate discipline for Jones. (Id. ¶ 16.) On August 16, 2017, Jones was terminated. (Def. SOF ¶ 13.)

After his termination, Jones went through several internal appeals, through both the Guaranteed Fair Treatment Process ("GFTP") and FedEx's internal EEO process. (Id. ¶¶ 14–15.) Jones submitted his Charge of Discrimination to the Equal Employment Opportunity Commission on April 25, 2018, alleging that his termination was discriminatory. (Id. ¶ 17.)

On August 1, 2018, Jones filed the instant action *pro se*. (ECF No. 1.) An Amended Complaint was filed on October 16, 2018. (ECF No. 15.) On January 15, 2019, the Court granted FedEx's Motion to Dismiss for Failure to State a Claim. (ECF No. 22; see also ECF

No. 17.)  Jones appealed the dismissal, and the Sixth Circuit reversed and remanded the case, holding that Jones timely filed his charge with the EEOC.  (ECF Nos. 35 & 36.)  The Magistrate Judge granted Jones's Motion to Appoint Counsel on September 14, 2020, and Jones filed a Second Amended Complaint on October 30, 2020.  (ECF Nos. 42 & 50.)

FedEx filed the instant Motion for Summary Judgment on May 21, 2021.  (ECF No. 58.)  Jones filed his Response on June 17, 2021.  (ECF No. 63.)  FedEx filed its Reply on July 1, 2021.  (ECF No. 72.)

## II.     LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties

are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 Fed. Appx. 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th

5

Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247-254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. See Mitchell, 964 F.2d at 584-85.

### III.   ANALYSIS

Title VII of the Civil Rights Act makes it illegal for any employer to discharge any individual because of that person's sex or race. 42 U.S.C. § 2000e-2. A plaintiff may prove a claim of race discrimination under Title VII with either direct or circumstantial evidence. See Evans v. Walgreens Co., 813 F. Supp. 2d 897, 917 (W.D. Tenn. 2011) (citing Barrett v.

Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009)). "[T]o compensate for the fact that direct evidence of intentional discrimination is hard to come by," the Supreme Court has articulated a test for evaluating indirect evidence of Title VII violations. Price Waterhouse v. Hopkins, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring). For indirect and circumstantial evidence discrimination cases, courts apply the McDonnell Douglas burden-shifting framework. Barrett, 556 F.3d at 515. In order to demonstrate a *prima facie* case of discrimination, the plaintiff must demonstrate: (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated differently than similarly-situated employees from outside the protected class. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). Once the plaintiff has made this showing, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009).

Once the defendant meets its burden of production, the burden shifts back to the plaintiff to demonstrate pretext, that is, that the "employer's explanation was fabricated to conceal an illegal motive." Id. Pretext may be demonstrated by showing that the defendant's legitimate, nondiscriminatory reason "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." Zambetti v. Cuyahoga Cmty. Coll., 314 F.3d 249, 258 (6th Cir. 2002). A reason cannot be shown to be a pretext for racial discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original). To survive summary judgment, the plaintiff must "produce

7

sufficient evidence from which a jury could reasonably reject [the defendant's] explanation" for its actions. Chen, 580 F.3d at 400.

    A.  Prima Facie *Case*

FedEx does not dispute that Plaintiff has met its burden with respect to establishing the first three prongs of his *prima facie* case. (ECF No. 58-2 at PageID 235.) FedEx argues, however, that Jones cannot demonstrate that he was treated differently from similarly situated white employees. (Id. at PageID 235–37.) "To make an initial case for racial discrimination, [the plaintiff] must show that he was 'similarly situated' 'in all of the relevant respects' to an employee of a different race who was treated better." Johnson v. Ohio Dep't of Pub. Safety, 942 F.3d 329, 331 (6th Cir. 2019) (quoting Gragg v. Somerset Tech. Coll., 373 F.3d 763, 768 (6th Cir. 2004); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)). "We consider whether the employees (1) engaged in the same conduct, (2) dealt with the same supervisor, and (3) were subject to the same standards." Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Jones has identified two white Security Officers who were treated better than Jones after allegedly engaging in the same conduct: Johnny Skeen and William Williams. (ECF No. 63 at PageID 517.) FedEx argues that Skeen's and W. Williams's conduct can be differentiated from Jones's because "Jones is the only security officer who was not watching the security monitor at the time the weapon went into the hub." (ECF No. 72 at PageID 808.) The Parties do not appear to dispute that Skeen, W. Williams and Jones were all subject to the same standards. The Court will address Skeen and W. Williams in turn.

Jones points to four incidents where Skeen missed prohibited items, including two loaded firearms and one Taser, in a 14-month period. (Plaintiff SOF ¶¶ 25–26, 29, 32.)

Skeen was not terminated after any of the incidents.  (Id. ¶¶ 28, 30, 32.)  Although Skeen did not have the same direct supervisor as Jones, his supervisor and Jones's both reported to the same individuals.  (Id. ¶ 24.)  FedEx conceded in its Motion that "while the direct managers of Security Officers vary, the Senior Manager (and, Managing Director) and the Human Resources professional, who are consulted on terminations are the same."  (ECF No. 58-2 at PageID 236.)  Therefore, the critical issue in evaluating each of the Skeen incidents is whether Skeen "engaged in the same conduct [as Jones] without such differentiating or mitigating circumstances that would distinguish their conduct[.]"  Redlin v. Grosse Pointe Pub. Sch. Sys., 921 F.3d 599, 610 (6th Cir. 2019) (quoting Mitchell, 964 F.2d at 583).

With respect to the first and second of Skeen's incidents, Jones has demonstrated a genuine dispute of material fact as to whether Skeen engaged in the same conduct as Jones.  These incidents involved Skeen letting a weapon into the FedEx hub on April 6, 2017 and a taser into the FedEx hub on April 17, 2017.  (Def. SOF ¶ 22.)  The warning letter issued to Skeen stated for both incidents that Skeen was "not focused on the screening monitor and failed to apprehend [the weapon or the taser]."  (ECF No. 63-5 at PageID 649.)  A reasonable jury could find, based on that evidence, that Skeen engaged in conduct similar to Jones's, despite the contemporaneous report for the April 6 incident indicating that Skeen was paying attention to the monitor, the testimony of Skeen that he saw the weapon but thought it was a test, and the testimony of Skeen's direct supervisor Joseph Laurenzi that, upon review of the incident, Skeen was looking at the x-ray monitor.  (See ECF Nos. 60-11 at PageID 395–97, 415–16 & 60-12 at PageID 422–28.)  Interpreting the evidence in the light most favorable to Jones, and absent video evidence to the contrary, the Court finds that the warning letter creates a genuine dispute of material fact regarding whether Skeen was as unfocused on the

screening monitor during the April 6 and April 17, 2017 incidents as Jones was during the August 4, 2017 incident. See George v. Youngstown State Univ., 966 F.3d 446, 462 (6th Cir. 2020) ("[O]n summary judgment, we cannot weigh which of these stories is more credible – so long as a reasonable juror could credit [the plaintiff's] evidence and not [the defendant's], the case must proceed to trial." (quoting Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775 (6th Cir. 2016))).

With respect to the third and fourth of Skeen's incidents, Jones has not demonstrated a genuine dispute of material fact as to whether Skeen engaged in the same conduct as Jones. The third incident, on July 19, 2017, involved Skeen letting a fidget spinner into the FedEx hub. (Def. SOF ¶ 26.) The acts of letting a loaded semiautomatic handgun and letting a fidget spinner into the FedEx hub are "not of 'comparable seriousness.'" Johnson, 942 F.3d at 331 (quoting Jackson, 814 F.3d at 778). A loaded semiautomatic handgun unquestionably poses significantly more danger to FedEx employees than a fidget spinner. And although Skeen did allow a firearm with an 8-round magazine to pass through security screening undetected on June 11, 2018 (see Plaintiff SOF ¶ 32), the Court has reviewed the video of the 2018 incident and finds that FedEx's description is accurate:

> [T]he video [] shows a FedEx employee bringing a pink backpack containing a weapon into the hub[.] Unlike the video of Mr. Jones, the video [] of Mr. Skeen [] shows the backpack with the weapon appearing on the x-ray screens but the screens do not flash or highlight the weapon. Moreover, unlike the video of Mr. Jones, the video [] of the employee exiting shows Mr. Skeen successfully screening the employee and locating the weapon.

(ECF No. 72 at PageID 811; see also Exs. O & P, ECF No. 72 (video exhibits received by the Clerk's office on July 7, 2021).) The Court finds that Skeen's watching the monitor in the June 2018 incident sufficiently differentiates his conduct from Jones's.

10

Turning to the W. Williams incidents, the Court first notes that W. Williams did have the same direct supervisor as Jones. (Plaintiff SOF ¶ 33.) On September 19, 2015, W. Williams let a loaded weapon into the FedEx hub. (Id. ¶ 34.) W. Williams was not terminated. (Id. ¶ 34.) However, unlike Skeen's warning letter, W. Williams's warning letter does not include language indicating that he was not focused on the screening monitor. (ECF No. 63-5 at PageID 632.) Instead, the warning letter states simply that he "failed to detect a pistol loaded with eight rounds that an employee had in his backpack as it passed through inbound screening." (Id.) Jones argues that because Russell could not recall whether he reviewed the video of the incident, a clear issue of fact remains as to whether W. Williams was distracted from his duties. (ECF No. 63 at PageID 520.) But Jones has not proffered any evidence suggesting that W. Williams was distracted, as unlike the April 2017 Skeen incidents, the warning letter issued to W. Williams for the 2015 incident does not indicate that he was unfocused. (Compare ECF No. 63-5 at PageID 649 and ECF No. 63-5 at PageID 632.) The Court finds that Jones has failed to create a genuine dispute of fact as to whether W. Williams's 2015 conduct was the same as Jones's conduct.

Jones also briefly mentions a July 2017 incident in which W. Williams allowed another weapon to pass through security. (ECF No. 63 at PageID 520.) The Court finds that Christie Shaw's Affidavit is sufficient to at least create an issue of fact whether the July 2017 incident occurred, as she states that she "personally witnessed" W. Williams allow a weapon to enter the FedEx hub. (ECF No. 63-11 at PageID 693.) But Shaw also states that W. Williams self-reported his error, indicating that he was focused enough on the monitor to catch his mistake (id.), even though Maxine Driver asserts in her Affidavit that W. Williams was "talking to a black female employee." (ECF No. 63-12 at PageID 695.) W. Williams's

ability to self-report his mistake, as compared to Jones's never realizing he had let a weapon into the hub, demonstrates that the conduct involved in these two incidents is not the same. Absent further evidence regarding the incident, the Court cannot find that a genuine dispute of material fact exists as to whether W. Williams engaged in the same conduct as Jones.

In summary, Jones has presented sufficient evidence to support a *prima facie* showing of race discrimination, based only on the April 2017 Skeen incidents.

B. *Pretext*

FedEx has met its burden to articulate a legitimate, nondiscriminatory basis for Jones's termination, claiming that Jones was terminated for "his complete failure to observe the x-ray monitor." (ECF No. 72 at PageID 808.) Therefore, the Court must evaluate whether Jones has met his burden of demonstrating that a reasonable jury could find that FedEx's basis for termination was pretextual. "Demonstrating pretext often consists of 'raising the question of why [the plaintiff] was singled out] for an adverse employment action." Strickland v. City of Detroit, 995 F.3d 495, 512 (6th Cir. 2021) (quoting George, 966 F.3d at 462). As stated above, "on the reading of [the evidence] most generous to Plaintiff," Jones has created a genuine dispute of material fact as to whether Skeen's conduct in the April 2017 incidents was so different from Jones's conduct as to "justify the differential treatment" Skeen received. Id. at 513–14 ("This Court has long held that evidence of such unjustified differential treatment is sufficient 'to withstand summary judgment on the issue of pretext' and is itself evidence that the 'proffered explanation… may not have actually motivated [the employer's] conduct.'" (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1023 (6th Cir. 2000))); see also Miles v. S. Cen. Hum. Res. Agency, Inc., 946 F.3d 883, 892 (6th Cir. 2020) (discussing that pretext can be demonstrated through the comparator framework by "showing that a similarly situated

employee outside the protected class committed the same misconduct but was not subject to the same consequences"). Therefore, the Court **DENIES** the Defendant's Motion as to the issue of its liability for Jones's claim of Title VII race discrimination.

C. *Punitive Damages*

FedEx also argues that it is entitled to summary judgment on the issue of punitive damages. (ECF No. 58-2 at PageID 241–42.) FedEx argues that "Jones's concerns were addressed during FedEx's internal appeal (GFTP) process and investigated through FedEx's internal EEO process" and that "it is undisputed that FedEx maintains anti-discrimination policies which prohibit discrimination on the basis of race." (Id. at PageID 241.) Jones argues that he is entitled to punitive damages because Buford-Darling submitted incorrect information in responding to Jones's GFTP and asserts that FedEx "manipulated the evidence to hide its own discriminatory actions toward Mr. Jones." (ECF No. 63 at PageID 525.)

"Punitive damages are available in a Title VII claim only if the plaintiff shows, by a preponderance of the evidence, that the employer 'engaged in a discriminatory practice… with malice or with reckless indifference to the federally protected rights of an individual.'" Corbin v. Steak 'n Shake, Inc., --- F. App'x ----, Case Nos. 20-3519/3553, 2021 WL 2774264, at *5 (July 2, 2021) (quoting 42 U.S.C. § 1981a(b)(1)). "The appropriateness of a punitive damage award is to be assess under the three-part inquiry set forth in Kolstad v. Am. Dental Ass'n, 527 U.S. 526 [] (1999)." EEOC v. New Breed Logistics, 783 F.3d 1057, 1072 (6th Cir. 2015). After demonstrating the statutory requirement that the employer act with malice or reckless indifference toward plaintiff's federal rights, the plaintiff must also demonstrate that "the employer is liable by establishing that the discriminatory actor worked in a managerial capacity and acted within the scope of his employment." Id. Finally, "the

13

defendant may avoid punitive-damages liability by showing that in engaged in good-faith efforts to comply with Title VII." Id.

Jones argues that Buford-Darling's failure to reference Skeen's April 17 and July 19, 2017 failures to detect and stop prohibited items in responding to Jones's GFTP could justify a jury's finding that FedEx acted "with malice or with reckless indifference" to Jones's federally protected rights. (ECF No. 63 at PageID 525–27.) Jones fails to respond, however, to FedEx's argument that it made good faith efforts to comply with anti-discrimination laws. (ECF No. 58-2 at PageID 241.) FedEx argues that "it is undisputed that FedEx maintains anti-discrimination policies which prohibit discrimination on the basis of race" and that "Jones was aware of FedEx's policies, in fact, availed himself of FedEx's internal EEO process and internal appeal (GFTP process) after his termination." (Id.) Jones has not pointed to any evidence suggesting that there was a lack of training on FedEx's anti-discrimination policy or that the policy was unenforced. See Parker v. Gen. Extrusions, Inc., 491 F.3d 596, 605 (6th Cir. 2007) (finding, in a judgment as a matter of law proceeding, that the evidence was sufficient for plaintiff to recover punitive damages, where an individual had not received any sexual harassment training in ten years at the company and another employer thought that the policy was unenforced). Even if Jones has created a genuine issue of material fact as to whether Buford-Darling concealed relevant comparator information during the GFTP process, Jones has failed to create a genuine issue of material fact as to whether FedEx engaged in good-faith efforts to comply with Title VII. Therefore, the Court **GRANTS** the Defendant's Motion on the issue of punitive damages.

## IV.   CONCLUSION

For each of the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED** on the issue of punitive damages. Defendant's Motion is **DENIED** on the issue of liability for a violation of Title VII.

**SO ORDERED**, this 11th day of August, 2021.

                                           /s/ Jon P. McCalla
                                          JON P. McCALLA
                                          UNITED STATES DISTRICT JUDGE